HAILYN J. CHEN (State Bar No. 237436)
hailyn.chen@mto.com
SARA N. TAYLOR (State Bar No. 288573)
sara.taylor@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

CHARLES F. ROBINSON (State Bar No. 113197)
charles.robinson@ucop.edu
KAREN JENSEN PETRULAKIS (State Bar No. 168732)
karen.petrulakis@ucop.edu
MARGARET L. WU (State Bar No. 184167)
margaret.wu@ucop.edu
ELISABETH C. YAP (State Bar No. 284132)
elisabeth.yap@ucop.edu
UNIVERSITY OF CALIFORNIA
Office of the General Counsel
1111 Franklin Street, 8th Floor
Oakland, CA 94607-5200
Telephone: (510) 987-9800
Facsimile: (510) 987-9757

Attorneys for Defendant
THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

NEFERTITI TAKLA and KRISTEN HILLAIRE GLASGOW,

Plaintiffs,

vs.

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

Defendant.

Case No.: 2:15-CV-4418 (CAS)

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: November 2, 2015
Time: 10:00 a.m.
Judge: Hon. Christina A. Snyder
Courtroom: 5

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 2, 2015, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Christina A. Snyder of the United States District Court of the Central District of California, in Courtroom 5 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, Defendant The Regents of the University of California ("UCLA") will and hereby does move to dismiss the first, second, and fifth claims for relief in Plaintiffs' First Amended Complaint ("Complaint").

The first, second, and fifth claims for relief in the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

Claims 1 and 2: Plaintiffs' first and second claims for relief, Nefertiti Takla's Title IX claims for monetary damages for UCLA's alleged deliberate indifference, fail to state claims upon which relief can be granted for two reasons. First, Ms. Takla fails to allege that she suffered any harassment after she gave notice to UCLA. Second, documents referenced in the Complaint and/or judicially noticeable at this stage demonstrate that Ms. Takla cannot show that UCLA was deliberately indifferent.

Claim 5: Plaintiffs' fifth claim for relief, Kristen Hillaire Glasgow's claim of negligent retention, fails to state a claim upon which relief can be granted for two reasons. First, Ms. Glasgow has not and cannot allege a "special relationship" between herself and UCLA personnel, and without a "special relationship," UCLA is not subject to vicarious liability for negligent retention, pursuant to section 815.2 of the California Government Code. Second, UCLA personnel are immune from individual liability for the conduct alleged, and therefore UCLA cannot be held vicariously liable.

This motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on September 17, 2015.

This motion is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and supporting declarations, the First Amended Complaint, and such additional authority and argument as may be presented in Defendant's reply and at any hearing on this Motion.

DATED: September 28, 2015

MUNGER, TOLLES & OLSON LLP
HAILYN J. CHEN
SARA N. TAYLOR

By: *Is/ Hailyn J. Chen*

HAILYN J. CHEN
Attorneys for Defendant
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. ALLEGATIONS IN FIRST AMENDED COMPLAINT .......... 2

- A. Plaintiff Nefertiti Takla .......... 3
- B. Plaintiff Kristen Hillaire Glasgow .......... 4

III. ARGUMENT .......... 5

- A. Plaintiffs' causes of action must be dismissed if they fail to state a legally cognizable claim .......... 5
- B. Takla's Title IX claims fail as a matter of law .......... 6
  - 1. Takla's Title IX claims must be dismissed because she has not alleged that UCLA's conduct caused her to undergo harassment or made her liable or vulnerable to it .......... 7
  - 2. Takla's allegations do not support the inference that UCLA responded to her report with deliberate indifference .......... 11
    - (a) Takla's allegations refer to documents that are judicially noticeable and directly contradict her allegations that UCLA was deliberately indifferent and did nothing to protect her from further harassment .......... 13
    - (b) Takla's allegations of delay and failure to follow internal policy are not actionable under Title IX .......... 17
- C. Glasgow's claim for vicarious liability with respect to negligent supervision, training and/or retention of Piterberg fails as a matter of law .......... 19
  - 1. Glasgow's vicarious liability claim must be dismissed because she fails to allege a "special relationship" between UCLA personnel and herself .......... 20
  - 2. Glasgow's vicarious liability claim fails for the additional reason that UCLA personnel are immune from liability based on the conduct alleged in the Complaint .......... 23

IV. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ........ 13

*Clifford v. Regents of University of California*,
2012 WL 1565702 (E.D. Cal. Apr. 20, 2012) ........ 24

*Davis ex rel. La Shonda D. v. Monroe County Board of Education*,
526 U.S. 629 (1999) ........ passim

*Doe ex rel. Doe v. Dallas Independent School District*,
153 F.3d 211 (5th Cir. 1998) ........ 11

*Doe ex rel. Doe v. Petaluma City School District*,
830 F. Supp. 1560 (N.D. Cal. 1993) ........ 24

*Doe v. Sch. Bd. of Broward County, Florida*,
604 F.3d 1248 (11th Cir. 2010) ........ 11

*Doe v. University of the Pacific*,
2010 WL 5135360 (E.D. Cal. Dec. 8, 2010) ........ 17

*Elgamil v. Syracuse University*,
2000 WL 1264122 (N.D.N.Y. Aug. 22, 2000) ........ 8

*Escue v. N. Oklahoma College*,
450 F.3d 1146 (10th Cir. 2006) ........ passim

*Galbraith v. Cnty. of Santa Clara*,
307 F.3d 1119 (9th Cir. 2002) ........ 13

*Gebser v. Lago Vista Independent School District*,
524 U.S. 274 (1998) ........ 11, 16

## TABLE OF AUTHORITIES (continued)


**Page**

*Ha v. Northwestern University*, 2014 WL 5893292 (N.D. Ill. Nov. 13, 2014) .... 10, 15, 16, 17

*Lindsay v. Fryson*, 2012 WL 2683019 (E.D. Cal. July 6, 2012) .... 21

*Lopez ex rel. Xavier C. v. Regents of University of California*, 5 F. Supp. 3d 1106 (N.D. Cal. 2013) .... 8, 11

*Moore v. Murray State University*, 2013 WL 960320 (W.D. Ky. Mar. 12, 2013) .... 8, 9, 11

*Nicole M. ex rel. Jacqueline M. v. Martinez Unified School District*, 964 F. Supp. 1369 (N.D. Cal. 1997) .... 24

*Oden v. N. Marianas College*, 440 F.3d 1085 (9th Cir. 2006) .... passim

*Reese v. Jefferson School District No. 14J*, 208 F.3d 736 (9th Cir. 2000) .... 8, 9

*Rouse v. Duke University*, 914 F. Supp. 2d 717 (M.D.N.C. 2012), aff'd, 535 F. App'x 289 (4th Cir. 2013) .... 8

*Rupert v. Bond*, 68 F. Supp. 3d 1142, 1154-55 (N.D. Cal. 2014) .... 13

*Ryan v. Travelers Indemnification Co.*, 2013 WL 3289075 (E.D. Cal. June 28, 2013) .... 13

*S.E.C. v. Mozilo*, 2009 WL 3807124 (C.D. Cal. Nov. 3, 2009) .... 13

*Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773 (8th Cir. 2001) .... 10

*Stanley v. Trustees of California State University*, 433 F.3d 1129 (9th Cir. 2006) .... 7

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) ........ 6, 13

*Thomas v. Meharry Medical College*, 1 F. Supp. 3d 816, 826 (M.D. Tenn. 2014) ........ 8, 9

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ........ 6

**STATE CASES**

*Baldwin v. Zoradi*, 123 Cal. App. 3d 275 (1981) ........ 21

*C.A. v. William S. Hart Union High School District*, 53 Cal. 4th 851 (2012) ........ passim

*Caldwell v. Montoya*, 10 Cal. 4th 972 (1995) ........ 20, 23, 24

*Crow v. State*, 222 Cal. App. 3d 192 (1990) ........ 21, 22

*Hoff v. Vacaville Unified School District*, 19 Cal. 4th 925 (1998) ........ 20

*Johnson v. State*, 69 Cal. 2d 782 (1968) ........ 23

*Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426 (1988) ........ 23

*Stockinger v. Feather River Community College*, 111 Cal. App. 4th 1014 (2003) ........ 21, 22

**FEDERAL STATUTES**

20 U.S.C. § 1681 *et seq.* ........ 2

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATE STATUTES**


Cal. Gov't Code § 815.2 .................... 19, 21

Cal. Gov't Code § 815.2(a) .................... 19

Cal. Gov't Code § 815.2(b) .................... 2, 20, 23, 24

Cal. Gov't Code § 820.2 .................... 20, 23, 24


**FEDERAL RULES**


FRCP 12(b)(6) .................... 5, 6, 13, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

UCLA, a unit of The Regents of the University of California ("University" or "UCLA"), is committed to creating and maintaining a community where all persons who participate in University programs and activities can work and learn together in an environment free from harassment and discrimination. The University takes sexual harassment seriously – its policy is to respond promptly to reports of sexual harassment and to take appropriate action to prevent, to correct, and when necessary, to discipline such behavior.

The appropriate action is often difficult to identify, and reasonable minds may differ about the best response in any particular case. University administrators, who confront issues involving students and faculty every day, are in the best position to make decisions about how to respond to reports of sexual harassment within the university setting. For that reason, the law vests this decision-making authority in universities. When a plaintiff seeks to hold a university liable for its response to harassment, "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis ex rel. La Shonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). A university may only be held liable for its response to sexual harassment if it "acts with deliberate indifference to known acts of harassment in its programs or activities." *Id.* at 633. Furthermore, the university may only be liable if its deliberate indifference "'subject[s]' its students to harassment." *Id.* at 644-45.

Plaintiff Nefertiti Takla's ("Takla") Title IX claims fail because they fall far short of meeting that high standard. Takla, a graduate student pursuing her Ph.D. in UCLA's History Department, alleges that she was sexually harassed by her professor, that UCLA was made aware of the harassment, that UCLA investigated – and that she was not harassed again by the professor. Documents explicitly referenced in the First Amended Complaint ("Complaint") and judicially noticeable

by this Court show that, upon receiving Takla's report of sexual harassment, UCLA immediately issued a no-contact order to the professor, forbidding him from contacting or retaliating against Takla, began an investigation that included interviewing other students and professors, and provided financial remedies to Takla, including paying for additional quarters of enrollment. The law is clear that such facts cannot give rise to a Title IX claim.

Plaintiff Kristen Hillaire Glasgow's ("Glasgow") state law claim for vicarious liability for three employees' alleged negligent supervision, training, or retention of the professor also should be dismissed, for two reasons. First, the California Supreme Court has held that, absent a "special relationship" between the individual employees and the plaintiff, "there can be no individual liability . . . for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability . . . ." *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 851, 877 (2012) (hereinafter, "*Hart*"). Glasgow, a graduate student pursuing a Ph.D., has not alleged any "special relationship" with any of the three individuals she claims were negligent. Second, a public entity is not vicariously liable for torts of its employees "where the employee is immune from liability." Cal. Gov't Code § 815.2(b). Courts have consistently held that school officials' decisions regarding how to respond to students' claims of sexual harassment are discretionary acts immune from liability. The University therefore cannot be vicariously liable, and Glasgow's claim should be dismissed.

## II. ALLEGATIONS IN FIRST AMENDED COMPLAINT

Plaintiffs Nefertiti Takla and Kristen Hillaire Glasgow each allege that they were sexually harassed while enrolled as graduate students pursuing their Ph.D. degrees at UCLA. These allegations are the basis for their claims that UC discriminated against them on the basis of gender in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. (hereinafter, "Title IX").

**A. Plaintiff Nefertiti Takla**

Takla's claims are based on UCLA's response to harassment she alleges she experienced by her dissertation advisor, UCLA History Professor Gabriel Piterberg ("Piterberg"). Takla alleges that from the summer of 2011 until June 2013, when Takla reported the harassment to UCLA, Piterberg sexually harassed her by speaking to her about sex, making unwanted sexual advances, and touching her inappropriately, including one instance in which he kissed her forcibly after a meeting at his home. Compl. ¶¶ 11-54.

Takla alleges that she first reported this behavior to UCLA on June 12, 2013, when she left an anonymous voice message for UCLA's Title IX Officer, Pamela Thomason ("Thomason"), stating that she wanted to report sexual harassment. *Id.* ¶ 56. Plaintiff alleges that she then spoke to Thomason anonymously on June 24, 2013, and on June 25, 2013, disclosed to Thomason her identity and the identity of her alleged harasser, Piterberg. *Id.* ¶¶ 59-60. Takla alleges that UCLA's response to her report was inadequate because, *inter alia*, UCLA officials pursued early resolution with Piterberg instead of instituting a "Formal Investigation," *id.* ¶¶ 69-71; UCLA did not formally document the resolution, *id.* ¶ 72; and UCLA took more than nine months to complete the investigation. *Id.* ¶ 73. Takla also alleges that she did not learn the outcome of the Early Resolution. *Id.* ¶ 74. Because she alleges that she did not learn "whether Professor Piterberg was sanctioned for his conduct," she speculates that "[i]t is doubtful that Professor Piterberg received any meaningful sanction for his behavior . . . ." *Id.*

Takla alleges that she suffered emotional distress as a result of the harassment and that fear of running into Piterberg has prevented her from going to campus. *Id.* ¶¶ 76-77. She further alleges that she will be at a disadvantage on the job market due to the loss of Piterberg as her advisor and reference. *Id.* at 78. Takla does not, however, allege that she experienced any harassment by Piterberg after she reported

his alleged conduct to Thomason. Takla asserts two causes of action, the Complaint's first and second claims for relief under Title IX.

**B. <u>Plaintiff Kristen Hillaire Glasgow</u>**

Glasgow similarly bases her claims on UCLA's response to a report of sexual harassment she alleges she made to Thomason in the summer of 2013. Glasgow alleges that Piterberg, who did not serve as her advisor, sexually harassed her at certain times between 2008 and October 2013 by talking to her about sex, making sexual propositions to her, and making inappropriate sexual advances, including one instance in which he forcibly kissed her. *Id.* ¶¶ 80-92.

Glasgow alleges that she reported this conduct to the Title IX Office on July 8, 2013. *Id.* ¶ 94. Specifically, Glasgow alleges that after she heard that Takla made a report of harassment, she called Thomason to report her own experiences with sexual harassment by Piterberg. *Id.* Glasgow alleges that she spoke on the phone with Thomason, described her experiences with Piterberg, and asked to be kept updated on Thomason's investigation. *Id.* ¶¶ 94-95, 97. Glasgow also alleges that on or around July 8, 2013, she spoke to David Myers ("Myers"), the then chair of the History Department, and told him about the harassment. *Id.* ¶ 98. Glasgow alleges that she had a second conversation with Thomason approximately one month later, in which she alleges Thomason said she did not remember speaking with Glasgow and told her "that UCLA had decided to treat Plaintiff Takla's case as a one-off incident by Professor Piterberg." *Id.* ¶¶ 99, 101.

Glasgow alleges one other interaction with the Title IX Office, which occurred in the summer and fall of 2014. *Id.* ¶¶ 111-14. She alleges that in August 2014, she spoke with Janice Reiff, who was then the President of the Academic Senate, and told her about the harassment. *Id.* ¶ 110. Glasgow alleges that around 10 days later she received a voicemail from Thomason saying that someone in the History Department had told her to contact Glasgow. *Id.* ¶ 111. The Complaint describes a series of alleged voice messages exchanged between Glasgow and

employees in the Title IX Office, until sometime in the fall of 2014 she allegedly "received a call from a Title IX employee saying she should come in to see them." *Id.* ¶¶ 112-14. Glasgow alleges that she did not follow up on this last call from the Title IX Office because over a year had passed since she first reported the harassment and she was "disheartened" with the office's response. *Id.* ¶ 114.

Glasgow alleges that she had two interactions with Piterberg after her first conversations with Thomason and Myers in July 2013. *Id.* ¶¶ 115-19. First, she alleges that she had coffee with Piterberg in August 2013, during which encounter he steered the conversation toward sex. *Id.* ¶ 115. She alleges a second interaction with Piterberg on October 5, 2013, when she allegedly encountered him at another professor's party for graduate students and professors from the History Department. *Id.* ¶¶ 116-19. She alleges that at this party, Piterberg cornered her and spoke to her about sex, asking her why they were not in a relationship. *Id.* ¶ 118.

Glasgow identifies three individuals she alleges could have prevented these two alleged incidents of harassment that occurred in August and October of 2013. Specifically, she alleges that Thomason, Myers, and Vice Chancellor of Academic Personnel Carole Goldberg ("Goldberg") each knew of reports of sexual harassment by Piterberg and had the authority or responsibility to recommend Piterberg for discipline, but did not do so. *Id.* ¶¶ 123-30. Glasgow asserts three causes of action: the Complaint's third and fourth claims for relief under Title IX, and a fifth claim for relief based on UCLA's alleged vicarious liability for negligent retention of Piterberg.

## III. ARGUMENT

### A. Plaintiffs' causes of action must be dismissed if they fail to state a legally cognizable claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the Court to dismiss a complaint that fails to state a claim upon which relief may be granted. Prior to "unlock[ing] the doors of discovery," the Court must determine that the

complaint alleges sufficient facts to support the inference that the right to relief is not just conceivable, but plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Moreover, when considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint, but may also consider documents incorporated by reference in the complaint or matters properly subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Further, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

Here, Takla's claims should be dismissed because she has failed to state any claim on which relief can be granted, and Glasgow's state law claim for vicarious liability also fails as a matter of law.

**B. Takla's Title IX claims fail as a matter of law**

Educational institutions receiving federal funds may be liable under Title IX for sexual harassment experienced by their students only if "they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive victims of access to educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. Of particular significance here, "[i]f a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum, *cause* students to undergo harassment or make them liable or

vulnerable to it." *Id.* at 644-45 (emphasis added) (internal quotation marks, citation, and alterations omitted).

The Ninth Circuit has recognized that *Davis* sets forth four requirements for the imposition of liability under Title IX for faculty-student harassment. *See Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir. 2006). To state a claim for damages under Title IX, a plaintiff must allege: (1) the institution had "substantial control" over both the harasser and the context in which the harassment occurred; (2) plaintiff suffered harassment "that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school;" (3) the institution had "actual knowledge" of the harassment; and (4) the institution acted with "deliberate indifference" to the known harassment, and this deliberate indifference "cause[d] students to undergo harassment or ma[d]e them liable or vulnerable to it." *Davis*, 526 U.S. at 645, 650. Each of these elements must be proven to establish Title IX liability for faculty-student harassment, such that failure to adequately allege any of these four requirements renders a plaintiff's claim infirm. Applying that standard, Takla's Title IX claims should be dismissed for two independent reasons. First, Takla has not alleged that any conduct by UCLA caused her to experience further harassment after she reported it. Second, Takla has not adequately alleged that UCLA responded to her reports of sexual harassment with deliberate indifference.

**1. Takla's Title IX claims must be dismissed because she has not alleged that UCLA's conduct caused her to undergo harassment or made her liable or vulnerable to it**

Takla has not alleged that any conduct by UCLA caused her to experience further harassment after she reported it, and her Title IX claim therefore must be dismissed. A failure to allege subsequent harassment is fatal to a Title IX claim. To state a claim for damages under Title IX, a plaintiff must allege that, after the institution had notice of the harassment, plaintiff experienced further sexual harassment or there was a substantial risk that she would experience further

harassment. *See Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739-40 (9th Cir. 2000); *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006). Absent such allegations, "under *Davis*, [the institution] cannot be deemed to have 'subjected' [plaintiff] to the harassment." *Reese*, 208 F.3d at 740 (citing *Davis*, 526 U.S. at 644-45). Courts have repeatedly dismissed similar complaints lacking allegations of subsequent harassment for failure to state a Title IX claim. *See, e.g.*, *Lopez ex rel. Xavier C. v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1126 (N.D. Cal. 2013) (dismissing Title IX claim because Plaintiff had failed to allege that university's conduct had "*caused* [plaintiff] to be subject to further harassment or deprivation of rights") (emphasis in original).[1]

Takla does not allege that she experienced any harassment by Piterberg after June 12, 2013, the earliest date on which she alleges she reported harassment to anyone at the University. Compl. ¶ ¶ 55-56. Indeed, Takla has not alleged any interaction with Piterberg after June 12, 2013, at all. Courts have dismissed cases with indistinguishable allegations. In *Thomas*, a graduate student sued under Title IX, alleging that he had been harassed by a faculty member over a period of time

[1] *See also, e.g.*, *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 826 (M.D. Tenn. 2014) (dismissing Title IX claim where plaintiff made "no allegations of sexual harassment following his filing a formal sexual harassment report"); *Moore v. Murray State Univ.*, No. 5:12-CV-00178, 2013 WL 960320, at *5 (W.D. Ky. Mar. 12, 2013) (dismissing Title IX claim where there were "no allegations that the indifference caused [plaintiff] to experience further or additional harassment"); *Rouse v. Duke Univ.*, 914 F. Supp. 2d 717, 725 (M.D.N.C. 2012), *aff'd*, 535 F. App'x 289 (4th Cir. 2013) (university was entitled to summary judgment because plaintiff had "offered no evidence that she suffered additional sexual harassment in the months following her rape, by the rapist or by anyone else, much less that any such harassment was attributable to Duke's alleged failure to investigate"); *Elgamil v. Syracuse Univ.*, No. 99-CV-611 NPMGLS, 2000 WL 1264122, at *8 (N.D.N.Y. Aug. 22, 2000) (dismissing Title IX claim because plaintiff could not show "that actionable harassment continued to occur *after* the appropriate school official gained actual knowledge of the harassment") (emphasis in original).

before filing a formal complaint with the school. 1 F. Supp. 3d at 818-21. The court dismissed his claim at the pleading stage because he had made "no allegations of sexual harassment following his . . . report" against the faculty member and noted that, in fact, "Plaintiff [did] not allege he had any further contact with [the faculty member] after reporting the alleged harassment . . . ." *Id.* at 826-27. In *Moore*, the plaintiff alleged that she notified the university of an assault by another student and did not allege that "any further harassment occurred after the assault." 2013 WL 960320, at *4. The court dismissed the plaintiff's claim based on her failure to allege that she experienced harassment after she reported the assault to the university, observing that the "complaint is entirely silent and contains no allegation of how [the university's alleged deliberate] indifference 'subjected' her to additional harassment." *Id.*, at *5.

As in *Thomas* and *Moore*, Takla's Title IX claim must be dismissed because she has failed to allege she experienced any harassment after giving UCLA notice of the harassment. Indeed, as in *Thomas*, Takla has not alleged that she had *any* further contact of any nature with Piterberg after that time. "[B]ecause [Takla] did not continue to experience sexual harassment once [s]he put [UCLA] on notice of [Piterberg's] conduct, there is no basis to find Defendant's response to [Takla's] sexual harassment report amounted to deliberate indifference." *Thomas*, 1 F. Supp. 3d at 827. In other words, "under *Davis*, [UCLA] cannot be deemed to have subjected [her] to the harassment," *Reese*, 208 F.3d at 740 (citing *Davis*, 526 U.S. at 644-45), and her claim must be dismissed.

Takla may argue that, though she has failed to allege that she experienced harassment after she reported Piterberg's conduct to the Title IX Office, her claims nonetheless survive dismissal because she was "made vulnerable" to harassment even if no such harassment occurred. *See* Compl. ¶ 77 (alleging that "[f]ear of running into Professor Piterberg and being subjected to additional sexual harassment has prevented Plaintiff Takla from going to UCLA's campus"). But as the cases

cited above make clear, to sustain a damages claim a plaintiff must allege that additional harassment occurred after the institution had actual knowledge of harassment. The case law uses the term "make vulnerable" to describe a type of causation by which an institution's conduct can be alleged to have resulted in further harassment, *i.e.*, a plaintiff can allege that further harassment occurred due to a vulnerability that was created by the university's deliberate indifference. The use of the term "make vulnerable" does not mean that a claim can be brought based merely on alleged "vulnerability" without an allegation that any further harassment actually occurred. *See Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001) ("Specifically, the school district's deliberate indifference must either directly cause the abuse to occur or make students vulnerable to such abuse, ***and that abuse must take place*** in a context subject to the school district's control.") (quotation marks omitted and emphasis added).

One court recently dismissed a similar Title IX claim because "other than an occasional glimpse of him on campus, there was no other contact between" the plaintiff and her harasser. *Ha v. Nw. Univ.*, No. 14 895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014), *appeal docketed*, No. 15-1786 (7th Cir. Apr. 10, 2015). The court further noted that although the plaintiff "claim[ed] that knowledge of [the harasser's] presence on the campus caused her considerable grief[,]" such allegations were "not actionable under Title IX." *Id.* Courts also have consistently held that a school is not required to remove an alleged harasser from campus to avoid liability for Title IX damages. *See, e.g.*, *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (declining to hold the defendant liable under Title IX for its decision not to fire the professor who had harassed the plaintiff and noting that "[a]n aggrieved party is not entitled to the precise remedy he or she would prefer"); *Escue*, 450 F.3d at 1155 (granting school's motion for summary judgment over plaintiff's assertion that the school "should have removed [her harasser] from the classroom"); *Ha*, 2014 WL 5893292, at *2. Under this precedent, the mere

allegation that an alleged harasser was present on campus cannot be sufficient to establish further actionable harassment creating Title IX liability – indeed, any other conclusion would be contrary to this precedent.

In short, the Complaint is "entirely silent and contains no allegation of how [UCLA's alleged deliberate] indifference 'subjected' [Takla] to additional harassment." *Moore*, 2013 WL 960320, at *5; *see Lopez*, 5 F. Supp. 3d at 1126. Takla's failure to allege that she experienced any harassment after she reported Piterberg's conduct to UCLA is fatal to her claims, and her Title IX claims must be dismissed.

**2. Takla's allegations do not support the inference that UCLA responded to her report with deliberate indifference**

Takla's claims should also be dismissed for a separate, independent reason. Takla's allegations fail to meet the "exacting" standard of deliberate indifference. *See Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010). An educational institution acts with deliberate indifference only where its response to harassment is "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. This high threshold for establishing deliberate indifference requires a showing that the school's response was "more than negligent, lazy or careless." *Oden*, 440 F.3d at 1089; *see also Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."). This is "not a mere 'reasonableness' standard," but rather a heightened one that requires a plaintiff to show that there was "'an official decision by the [funding] recipient not to remedy the violation.'" *Davis*, 526 U.S. at 642, 649 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).

Courts have cautioned that a Title IX plaintiff "is not entitled to the precise remedy that he or she would prefer." *Oden*, 440 F.3d at 1089. Title IX does not impose upon schools the duty to make particular disciplinary decisions, nor does it

expose a school to liability for damages when it chooses not to remove an alleged harasser from campus. *Davis*, 526 U.S. at 648 (emphasizing that the deliberate indifference standard "does not mean . . . that administrators must engage in particular disciplinary action"); *Oden*, 440 F.3d at 1089 (holding that the school was not liable for deliberate indifference under Title IX for its decision not to fire the alleged harasser); *Escue*, 450 F.3d at 1155 (granting summary judgment to the school even though it did not remove the alleged harasser from campus until the end of the school year).

Takla asserts a number of allegations in support of her claim that UCLA was deliberately indifferent to her report of sexual harassment. As an initial matter, Takla's allegations show that UCLA promptly responded to her report by investigating. According to Takla's allegations, UCLA's Title IX Officer Pamela Thomason began to investigate Takla's allegations immediately after she learned of the harassment and of Takla and Piterberg's identities on June 25, 2012. Compl. ¶¶ 63-65, 68. By July 2, 2013, less than a week later, Thomason had already interviewed Piterberg about Takla's allegations, *id.* ¶ 63; and by July 9, 2013, less than two weeks after Takla reported the harassment, Thomason had interviewed or spoken with several other students and faculty members about sexual harassment by Piterberg, *id.* ¶ 65. Nevertheless, Takla maintains that UCLA was deliberately indifferent, apparently because UCLA did not resolve the matter with Piterberg until nine months after Takla reported his conduct to Thomason, *id.*¶ 73; UCLA did not disclose to Takla the sanctions or discipline imposed on Piterberg, *id.* ¶ 74; and UCLA allegedly failed to follow its own internal policies for handling sexual harassment matters. Takla also alleges that various UCLA personnel, including Thomason, "failed to do anything to prevent further harassment." *Id.* ¶¶ 127-29.

Takla's allegations fail to meet the high threshold the Supreme Court and the Ninth Circuit have set for deliberate indifference for two reasons. First, documents incorporated by reference in the Complaint and judicially noticeable by the Court

clearly contradict Takla's assertion that UCLA was deliberately indifferent and did nothing to help her following her report of sexual harassment. Takla's allegations quote selectively from certain documents and characterize them as showing deliberate indifference when in fact this selective subset of documents, read in their entirety, demonstrate prompt and responsive action. Second, the alleged nine-month delay and alleged failure to follow internal policies cannot, as a matter of law, support a Title IX claim.

*(a) Takla's allegations refer to documents that are judicially noticeable and directly contradict her allegations that UCLA was deliberately indifferent and did nothing to protect her from further harassment*

Documents referred to in the Complaint directly contradict Takla's conclusory allegations of deliberate indifference and that UCLA failed to do anything to prevent further harassment.[2] The Ninth Circuit has explained that the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint" when considering a motion to dismiss. *Steckman*, 143 F.3d at 1295-96. The documents referenced in the Complaint are judicially noticeable pursuant to the incorporation by reference doctrine, as explained in UCLA's concurrently-filed Request for Judicial Notice (hereinafter, "RJN"). These documents demonstrate that UCLA acted promptly to thoroughly

[2] Under the incorporation by reference doctrine, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds*, *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1123-24 (9th Cir. 2002). Applying this rule, courts in the Ninth Circuit have routinely taken judicial notice of emails whose contents are alleged in the plaintiff's complaint but which are not physically attached to the pleading. See, e.g., *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1154-55 (N.D. Cal. 2014); *Ryan v. Travelers Indem. Co.*, No. 2:13–CV–00607–JAM–KJN, 2013 WL 3289075, at *3 (E.D. Cal. June 28, 2013); *S.E.C. v. Mozilo*, No. CV 09–3994–JFW (MANx), 2009 WL 3807124, at *7 n.2 (C.D. Cal. Nov. 3, 2009).

investigate her report of sexual harassment, to provide both protective measures and financial support to Takla, and to pursue disciplinary measures for Piterberg:

*UCLA's investigation*. Takla's allegations selectively quote from certain emails between Takla and Thomason in an attempt to show deliberate indifference. Compl. ¶¶ 60, 63-65, 74. These emails are judicially noticeable and properly considered by this Court in connection with the motion to dismiss. *See* RJN, at 2-5. Read in their entirety, they show that Thomason promptly interviewed numerous people and communicated regularly with Takla regarding the status of the investigation. In the July 2, 2013 email that Takla refers to in paragraph 63 of the Complaint, Thomason told Takla that she had spoken with Piterberg about the harassment. Thomason wrote:

> I have interviewed Prof. Piterberg and he acknowledged much of the conduct (while denying any attempt to manipulate or coerce) and expressed great remorse. Then he arranged to meet with me again [] and repeated how sorry he states he is.

Thomason Decl., Ex. 3. Takla acknowledged receipt of Thomason's email on July 4, 2013. Thomason Decl., Ex. 4. Emails exchanged between Takla and Thomason also show that Thomason spoke with many other administrators, faculty members, and students, in an effort to determine whether others had experienced harassment similar to what Takla had reported and to decide the best way to respond to Takla's allegations.[3] Thomason Decl., Exs. 5, 6, 7.

---

[3] On July 9, 2013, for example, Thomason wrote to Takla explaining that she had spoken with several people about harassment by Piterberg. Thomason Decl., Ex. 5. Specifically, Thomason wrote that she had spoken to a UCLA history professor, a graduate student, and a junior faculty member in the History Department to determine whether these individuals knew of or had experienced harassment by Piterberg. In subsequent emails, Thomason explained her continuing efforts to investigate whether any other students had experienced harassment by Piterberg. On July 12, 2013, Thomason told Takla via email that she had spoken with another graduate student, who had "denie[d] any sexual or romantic advances" by Piterberg. Thomason Decl., Ex. 6. On July 18, 2013, Thomason sent Takla an email in which

*UCLA's no-contact order to Piterberg*. Other judicially noticeable documents show that, contrary to Takla's allegation that various UCLA personnel, including Thomason, "failed to do anything to prevent further harassment," Compl. ¶¶ 127-29, UCLA acted immediately to prevent further harassment. An email subject to judicial notice shows that, on June 26, 2013, one day after Takla revealed her harasser's identity, Thomason issued a no-contact order to Piterberg. Thomason Decl., Ex. 9. Thomason informed Piterberg of Takla's allegations and UCLA's investigation of those allegations. Thomason directed Piterberg "to refrain from communicating or otherwise interacting with Ms. Takla" and that he "must refrain from taking any retaliatory action" against Takla. Thomason Decl., Ex. 9. Takla does not allege that she and Piterberg had any contact following her report to UCLA. Piterberg therefore apparently "acceded to this [no-contact] instruction, and . . . there was no other contact between the two." *Ha*, 2014 WL 5893292, at *2.

*Disciplinary action for Piterberg*. Takla's allegations also reference documents that, read in their entirety, show that Thomason and other UCLA personnel took disciplinary action against Piterberg, and informed Takla as much. Compl. ¶ 63. On July 2, 2013, Thomason informed Takla that because Piterberg "[was] not disputing the basic facts and is cooperative," Thomason "believe[d] that the department w[ould] probably reach a resolution with respect to possible disciplinary action." Thomason Decl., Ex. 3.

*Financial remediation for Takla*. Takla's allegations also reference and selectively quote from judicially noticeable documents, Compl. ¶ 74, that, read in their entirety, show that UCLA provided financial compensation to Takla, covering two full quarters of additional classes. On June 10, 2014, Takla wrote to Thomason

---

she stated that she was planning to interview "at least one more woman" and that she would then brief Vice Chancellor Carole Goldberg. Thomason Decl., Ex. 7. These emails chronicle a thorough investigation into Takla's allegations.

confirming that UCLA would grant her two quarters of funding. On June 11, 2014, Thomason replied, "[t]he university is still granting the two quarters of funding." Thomason Decl., Ex. 8. Emails between Thomason and Takla, properly subject to judicial notice as described in UCLA's RJN, show that UCLA also reimbursed Takla for the cost of counseling she received following the alleged harassment. On August 28, 2013, Thomason wrote to Takla, saying: "The campus definitely agrees to reimburse you for the counseling fees you incurred between April and June." Thomason Decl., Ex. 10. Then, on January 24, 2014, Thomason wrote to Takla confirming that additional counseling sessions had been approved. Thomason Decl., Ex. 11.

Takla's allegations and judicially noticeable documents selectively quoted or referenced in those allegations show that UCLA responded promptly and reasonably to Takla's report of sexual harassment. These judicially noticeable documents show only a few of the many actions UCLA personnel took to support, protect, remediate, and compensate Takla after learning of her allegations; but these documents alone show that UCLA's response was not deliberately indifferent. Far from making "an official decision . . . not to remedy the violation," *Gebser*, 524 U.S. at 290, UCLA "began to act as soon as it became aware of [Takla's] allegations," *Oden*, 440 F.3d at 1089. And, according to the Complaint, Takla never again experienced harassment by Piterberg. Takla's own allegations and the documents she refers to show UCLA "took timely, reasonable, and successful measures to end the harassment." *Ha*, 2014 WL 5893292, at *2.

Numerous courts have rejected Title IX claims based on similar facts. In *Oden*, the Ninth Circuit held there was no deliberate indifference where the college promptly responded to the plaintiff's reports of harassment by, among other actions, instructing the alleged harasser "not to have any contact with Plaintiff," providing the plaintiff academic and psychological support, and forming a committee to investigate her claims. 440 F.3d at 1089-90. In *Ha*, plaintiff's allegations showed

that the school immediately conducted an investigation into the plaintiff's allegations and took prompt remedial action, "which consisted at least in part by instructing [the professor] not to have any contact with Plaintiff." 2014 WL 5893292, at *2 (dismissing under Rule 12(b)(6) the student's Title IX claim for deliberate indifference).[4] The facts alleged here cannot support a reasonable inference that UCLA responded with deliberate indifference to Takla's reports of sexual harassment. Her Title IX claims must be dismissed. *See id.*

*(b) Takla's allegations of delay and failure to follow internal policy are not actionable under Title IX*

In light of UCLA's prompt remedial and protective actions, Takla's allegations that UCLA did not resolve the matter with Piterberg until nine months after Takla reported his conduct to Thomason and failed to follow its own internal policies for handling sexual harassment matters, Compl. ¶¶ 72-73, even if assumed to be true, cannot support a reasonable inference of deliberate indifference.

When a school promptly institutes remedial and protective measures, as UCLA did here, a delay in the formal resolution of the complaint does not rise to the high threshold of deliberate indifference. In *Oden*, the Ninth Circuit considered facts similar to those before the Court here: The college responded immediately to the plaintiff's report of sexual harassment by her teacher, including issuing a no-

---

[4] Other decisions are in accord. *See, e.g.*, *Escue*, 450 F.3d at 1155 (holding that as a matter of law the university was not deliberately indifferent when it removed plaintiff from the harassing environment and immediately questioned two students and the alleged harasser about the harassment, even though it did not immediately remove the alleged harasser from the classroom); *Doe v. Univ. of Pac.*, No. CIV. S-09-764 FCD/KJN, 2010 WL 5135360, at *13-14 (E.D. Cal. Dec. 8, 2010) (granting defendant's motion for summary judgment when the evidence showed that, among other actions, the university promptly investigated plaintiff's reported assault, punished the students who had assaulted her, and offered accommodations to plaintiff to help her transition back to the university, including holding her scholarship open).

contact order, but did not convene a hearing until nine months later and did not fire the alleged harasser. 440 F.3d at 1089. The court noted that the nine-month delay contravened the college's own internal policy of holding a hearing within 30 days after receiving a complaint, but reasoned that "[n]onetheless the record fails to demonstrate that the delay was more than negligent, lazy, or careless." *Id.* Considering the numerous actions the college took in immediate response to the plaintiff's report, the Ninth Circuit held that the record did not "permit an inference that the delay was a deliberate attempt to sabotage Plaintiff's complaint or its orderly resolution" and that the decision not to fire the alleged harasser could not support an inference of deliberate indifference. *Id.*

Moreover, the Ninth Circuit has made clear that a university is not liable under Title IX when its response to harassment is merely "negligent, lazy, or careless." *Oden*, 440 F.3d at 1089; *see also Escue*, 450 F.3d at 1155 (holding that the school's response was not clearly unreasonable even if it could have taken more aggressive action). Accepting as true the allegations in the Complaint and construing them in the light most favorable to Takla, the facts as alleged *at most* support the inference that UC was negligent in its response to Takla's report – that Thomason made mistakes in her investigation or that the full outcome of the resolution process was not disclosed. But such negligence is not actionable in a civil suit under Title IX. *See Oden*, 440 F.3d at 1089; *Escue*, 450 F.3d at 1155. Nor is Takla entitled to damages under Title IX merely because she disagrees with the school's response to her complaint of harassment. *See Oden*, 440 F.3d at 1089 (granting summary judgment and noting that though the plaintiff quarreled with the decision not to fire the alleged harasser, she was not entitled to the precise remedy she would prefer); *Escue*, 450 F.3d at 1155 (noting that "victims do not have a right to seek particular remedial demands") (internal alteration, quotation marks, and citation omitted).

In sum, the facts alleged in the Complaint and documents subject to judicial notice demonstrate that the University took many affirmative steps to respond to Takla's report – including issuing a no-contact order to Piterberg, investigating Takla's report, forbidding retaliation, and providing financial compensation to Takla. These facts do not raise a reasonable inference that UCLA responded to Takla's reports with deliberate indifference. Her Title IX claims must be dismissed.

**C. Glasgow's claim for vicarious liability with respect to negligent supervision, training and/or retention of Piterberg fails as a matter of law**

Glasgow seeks to hold UCLA vicariously liable for the alleged conduct of three of its employees, (1) UCLA's former Title IX Officer, Pamela Thomason; (2) the former Chair of UCLA's History Department, David Myers, and (3) UCLA's Vice Chancellor of Academic Personnel, Carole Goldberg. Glasgow alleges that these three individuals negligently failed to recommend Piterberg for discipline or dismissal. Compl. ¶¶ 123-130, 159-62. She alleges that, based on this conduct, these three employees are liable for the tort of negligent supervision, training, and/or retention, and that UCLA therefore is liable for their conduct on a vicarious liability theory under California Government Code § 815.2. *Id*. ¶ 162, n.3.

As a general matter, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a). However, liability for the tort of negligent supervision, training, and retention is circumscribed by two limiting principles, each of which is separately and independently fatal to Glasgow's claim. First, absent a "special relationship" between the employee and the plaintiff, "there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability under section 815.2." *Hart*, 53 Cal. 4th

at 877. Because Glasgow has failed to allege that a "special relationship" existed between herself and any of the UCLA employees identified in the Complaint, her claim for vicarious liability in respect of the negligent supervision, training, and/or retention of Piterberg must fail.

Second, "a public entity is not liable for an injury resulting from an act or omission of an employee . . . where the employee is immune from liability." Cal. Gov't Code § 815.2(b). A public employee, in turn, is immune from liability for "an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. Glasgow's vicarious liability claim is based on UCLA employees' alleged failure to recommend Piterberg for discipline or dismissal. But such decision is, as a matter of law, "the result of the exercise of discretion" vested in them in their capacity as UCLA employees. *See Caldwell v. Montoya*, 10 Cal. 4th 972, 980 (1995). For this reason as well, Glasgow's fifth claim for relief fails as a matter of law and must be dismissed.

**1. Glasgow's vicarious liability claim must be dismissed because she fails to allege a "special relationship" between UCLA personnel and herself**

In *Hart*, the California Supreme Court recognized that school districts may be liable for their employees' negligent hiring, retention, and supervision of fellow employees based on the "special relationship" that exists between school district employees and their students. 53 Cal. 4th at 875-78. This special relationship arises from "the mandatory character of school attendance and the comprehensive control over students exercised by school personnel, 'analogous in many ways to the relationship between parents and their children.'" *Id.* at 869-70 (quoting *Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal. 4th 925, 935 (1998)).

The existence of this special relationship is vital to liability: "Absent such a special relationship, there can be no liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability under

section 815.2." *Id.* at 877 (citing Cal. Gov't Code § 815.2); *see also Lindsay v. Fryson*, No. 2:10-cv-02842 LKK KJN PS, 2012 WL 2683019, at *7 (E.D. Cal. July 6, 2012) (dismissing a vicarious liability claim for negligent supervision, hiring, and retention against the County employee when the plaintiff had failed to allege a special relationship between herself and the County); *Crow v. State*, 222 Cal. App. 3d 192, 209 (1990) (holding that California State University Sacramento could not be liable to plaintiff for its failure to supervise students because no special relationship existed between the school and the plaintiff).

Courts have recognized that there is no special relationship between university personnel and university students because the features that give rise to the special relationship between school employees and their students do not exist in the university context. First, unlike grammar and high school attendance, university attendance is not mandatory. *Stockinger v. Feather River Comm. Coll.*, 111 Cal. App. 4th 1014, 1031 (2003). Second, university administrators do not exercise comprehensive control over their students' lives, as K-12 school administrators do over students during school hours. *See id.* Further, while grammar and high school students are "immature schoolchildren," college students are adults. *Crow*, 222 Cal. App. 3d at 209 (recognizing the "distinction between young, immature schoolchildren in grammar and high schools on the one hand and adult students in colleges and universities on the other"). Finally, university administrators do not stand in a relationship to their students that is akin to the relationship between parents and their offspring, as do public K-12 school administrators. *Stockinger*, 111 Cal. App. 4th at 1031 (recognizing that colleges and universities have abandoned the "*in loco parentis*" model). For these reasons, courts have declined to hold that university employees have a special relationship with students such that they may be held liable for the tort of negligent retention or supervision of their fellow employees. *See, e.g.*, *Crow*, 222 Cal. App. 3d at 208 (no special relationship arose from plaintiff's "affiliation with the university as a student"); *Baldwin v.*

*Zoradi*, 123 Cal. App. 3d 275, 284-288 (1981) (no special relationship existed between the Trustees of the university and university students).

Based on the allegations in the Complaint, Glasgow's relationship with Thomason, Goldberg, and Myers arises from Glasgow's enrollment as a graduate student at UCLA. As a matter of law, this relationship is insufficient to create the special relationship that might expose university personnel to liability for negligent supervision, training, or retention. *See Crow*, 222 Cal. App. 3d at 208. Indeed, the facts alleged in the Complaint highlight the differences between Glasgow's relationship with UCLA personnel and a lower school student's relationship with school administrators. Glasgow alleges that she is pursuing a Ph.D. in history at UCLA, Compl. ¶ 79, her attendance at which is not mandatory. *See Stockinger*, 111 Cal. App. 4th at 1031 (recognizing the voluntary nature of university attendance). As a Ph.D. student, it cannot be reasonably inferred from the allegations in the Complaint that UCLA, let alone any of the individual personnel identified in the Complaint, exercises "comprehensive control" over Glasgow or the environment in which Glasgow pursues her studies and interacts with faculty. Further, Glasgow is an adult, not a "young, immature schoolchild[]." *See Crow*, 222 Cal. App. 3d at 209.

Glasgow's circumstances are readily distinguishable from the circumstances contemplated in *Hart* and, as a matter of law, cannot support the inference that a special relationship existed between Glasgow and UCLA personnel. *See Crow*, 222 Cal. App. 3d at 208. In the absence of a special relationship, the individuals identified in the Complaint cannot be held liable for the tort of negligent supervision, training, and/or retention of Piterberg. Because the individual employees cannot be liable for the tort of negligent retention, UCLA cannot be held liable on a vicarious liability theory. *See Hart*, 53 Cal. 4th at 875-78 (recognizing that in the absence of a special relationship between school employees' and their students, neither the employees nor the school may be liable for the tort of negligent

retention). Accordingly, Glasgow's claim for vicarious liability with respect to negligent training, supervision, and/or hiring of Piterberg must be dismissed.

**2. Glasgow's vicarious liability claim fails for the additional reason that UCLA personnel are immune from liability based on the conduct alleged in the Complaint**

Even if Glasgow had alleged a special relationship between herself and UCLA personnel, her claims would fail because the individuals identified in the Complaint are immune from liability for the conduct alleged.

A public entity is not vicariously liable for the torts of its employees "where the employee is immune from liability." Cal. Gov't Code § 815.2(b). As relevant here, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. The "discretionary acts immunity" articulated in § 820.2 shields public employees from liability for "discretionary acts," which the California Supreme Court has defined as acts that "require[] the exercise of judgment or choice" or the "equitable decision of what is just and proper." *Johnson v. State*, 69 Cal. 2d 782, 788 (1968).

The California Supreme Court and lower courts have "applied the rule liberally to protect the officials of public agencies, such as school districts and state colleges, when they took discretionary actions within the scope of their authority and duty concerning the employment of academic or administrative personnel." *Caldwell*, 10 Cal. 4th at 979 (holding that, as a matter of law, a school board's decision whether to replace a school principle was a discretionary act and board members enjoyed immunity under § 820.2); *see also Kemmerer v. Cnty. of Fresno*, 200 Cal. App. 3d 1426, 1438-39 (1988) (holding that administrators' decision "to institute disciplinary proceedings . . . was a policy decision involving the exercise of discretion entitling them to immunity under Government Code section 820.2"). Courts have further recognized that discretionary acts immunity extends to protect school officials' decisions regarding how to respond to students' complaints of

sexual harassment, including whether to institute discipline against the alleged harassers. *See, e.g.*, *Nicole M. ex rel. Jacqueline M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389 (N.D. Cal. 1997) (holding that school officials' decision regarding whether to impose discipline on students and how to address reports of sexual harassment were discretionary acts); *Clifford v. Regents of Univ. of Cal.*, No. 2:11-CV-02935-JAM-GGH, 2012 WL 1565702, at *10 (E.D. Cal. Apr. 20, 2012) (holding that school officials were immune from liability pursuant to § 820.2 for negligence based on their response to plaintiffs' reports of harassment by a campus fraternity); *Doe ex rel. Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1583 (N.D. Cal. 1993) (holding that plaintiff's counselor was immune from liability under § 820.2 for negligent and intentional infliction of emotional distress based on his allegedly inadequate response to plaintiff's reports of sexual harassment).

The conduct upon which Glasgow bases her negligent supervision, training, and/or retention claim here falls squarely within the scope of the discretionary acts immunity, as articulated by California and federal district courts. Glasgow alleges that Goldberg, Thomason, and Myers are liable for the tort of negligent supervision, training, and/or retention because they had authority to refer Piterberg to disciplinary proceedings and failed to do so. Compl. ¶¶ 123-130. But, as explained above, under California law the decision whether to institute disciplinary proceedings against an alleged harasser and what discipline to pursue, including whether to remove a university faculty member from his position, is a discretionary act from which university employees are immune from liability. *See Caldwell*, 10 Cal. 4th at 979. Because the individuals identified in the Complaint are each individually immune from liability, so, too, is UCLA. *See* Cal. Gov't Code § 815.2(b). Therefore, Glasgow's claim for negligent supervision, training, and/or retention must be dismissed for this reason as well.

## IV. CONCLUSION

For the foregoing reasons, UCLA respectfully requests that this Court dismiss Takla's Title IX claims, the first and second claims for relief in the Complaint, for two independent reasons. First, Takla has not alleged that any conduct by UCLA caused her to experience further harassment. Second, Takla's allegations fail to support an inference that UCLA responded to her report of sexual harassment with deliberate indifference. UCLA further respectfully requests that this Court dismiss Glasgow's claim for vicarious liability in respect of the negligent training, supervision, and/or retention of Piterberg, the fifth claim for relief in the Complaint, as she has failed to allege a "special relationship" between herself and UCLA personnel and because the UCLA personnel identified in the Complaint are immune from liability for the conduct alleged.

DATED: September 28, 2015

MUNGER, TOLLES & OLSON LLP
HAILYN J. CHEN
SARA N. TAYLOR

By: *_/s/ Hailyn J. Chen_*
HAILYN J. CHEN
Attorneys for Defendant
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA