UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
|---|---|---|---|
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Vincent Fisher | Hailyn Chen<br>Sara Taylor | |

**Proceedings:**     DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (Dkt. 20, filed September 28, 2015)

## I. INTRODUCTION

On August 28, 2015, plaintiffs Nefertiti Takla ("Takla") and Kristen Hillaire Glasgow ("Glasgow") filed their First Amended Complaint ("FAC") against defendant the Regents of the University of California ("UCLA"). Dkt. 18. In their FAC, Takla and Glasgow, Ph.D. candidates at UCLA's History Department, allege that they were sexually harassed by Gabriel Piterberg ("Piterberg"), a history professor at UCLA. Takla and Glasgow assert sexual-harassment and hostile-environment claims against UCLA under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and Glasgow additionally asserts a claim for vicarious liability against the university on the basis of the negligent supervision, training, and/or retention of Piterberg.

On September 28, 2015, UCLA filed a motion to dismiss Takla's Title IX claims and Glasgow's vicarious-liability claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 20. On October 12, 2015, plaintiffs filed their opposition. Dkt. 31. On October 19, 2015, UCLA filed a reply. Dkt. 32. Having carefully considered the parties' arguments, the Court finds and concludes as follows.[1]

---

[1] On October 28, 2015, plaintiffs filed a motion for leave to file a sur-reply to UCLA's motion to dismiss the FAC. Plaintiffs seek leave to file a sur-reply on the basis that UCLA raised a new issue in its reply brief, namely that Takla conceded that UCLA "promptly investigated" her claims of sexual harassment. The Court grants plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
|---|---|---|---|
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

## II. BACKGROUND

### Takla

Takla alleges that Piterberg, her dissertation advisor, began sexually harassing her in the summer of 2011. (FAC ¶ 11.) On June 12, 2013, Takla reported the harassment to UCLA's former Title IX Coordinator, Pamela Thomason ("Thomason"). (Id. ¶ 55.) On June 26, 2013, Takla met with the former Chair of UCLA's History Department, David Myers, and requested that Piterberg be replaced by a new advisor. (Id. ¶ 61.) Professor Myers agreed, but asked her not to speak to anyone about what happened with Piterberg. (Id.)

On July 2, 2013, Takla received an e-mail from Thomason informing her that she had interviewed Piterberg, who admitted to the "basic facts" but denied "manipulating or trying to coerce" her. (Id. ¶ 63) Thomason informed Takla that UCLA would handle her case through a process called, "Early Resolution," in lieu of a formal hearing before the Academic Senate, which was Takla's preference. (Id. ¶¶ 63, 66.) Thomason discouraged Takla from filing a written request for a formal investigation, stating that Piterberg's peers may well side with him. (Id. ¶ 71.) According to Takla, Thomason convinced her that Early Resolution was the best way to handle this matter because it would be faster and more efficient and would eliminate the need for Takla to testify before the Academic Senate. (Id. ¶ 66.) Thomason assured Takla that she would still be informed of the university's punishment and sanctions against Piterberg. (Id.) Thomason noted, however, that in order for UCLA to handle Takla's claims through Early Resolution, UCLA's Vice Chancellor of Academic Personnel, Carol Goldberg, would need to confirm that Piterberg had not sexually harassed other women on campus. (Id. ¶ 67.) Thomason learned through her investigation that Piterberg sexually harassed another graduate student at UCLA, a junior professor in another department, and a junior

---

leave to file their sur-reply. The proposed sur-reply accompanying plaintiffs' request, however, fails to address the new issue that UCLA allegedly raised in its reply. Rather, the sur-reply is in the nature of a supplemental brief that essentially repeats the arguments in plaintiffs' opposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

professor in the History Department. (Id. ¶ 68.) Nonetheless, UCLA settled Takla's case through Early Resolution. (Id. ¶ 69.) It is against UCLA's policy on sexual harassment to proceed with Early Resolution in cases involving sexual assault or multiple complaints of sexual misconduct. (Id.)

In March 2014, nine months after Takla first reported Piterberg's harrassment, UCLA concluded its investigation without making any formal findings. (Id. ¶ 73.) The delay in concluding the investigation was in violation of UCLA's Title IX policies. (Id.) When Takla requested a formal investigative report in May 2014, Thomason informed Takla that there was no formal documentation or report, again in violation of UCLA's policies. (Id. ¶ 72.) Takla never learned the outcome of Early Resolution nor whether Piterberg was sanctioned for his conduct. (Id. ¶ 74.)

Fear of running into Piterberg and being subjected to additional sexual harassment has prevented Takla from going to UCLA's campus. (Id. ¶ 77.)

**Glasgow**

Glasgow alleges that she was sexually harassed by Piterberg from February 2008 to October 2013. (Id. ¶¶ 80, 81.) On July 7, 2013, Glasgow received a call from a faculty member in the History Department informing her that Takla had filed a sexual harassment complaint against Piterberg to no avail. (Id. ¶ 93.) On July 8, 2013, Glasgow reported to Thomason that she too was sexually harassed by Piterberg. (Id. ¶ 94.) Glasgow also contacted Professor Myers and informed him of this fact, but Professor Myers asked Glasgow not to share her story with others. (Id. ¶ 98.)

In August 2013, Piterberg asked Glasgow to have coffee him on campus. (Id. ¶ 115.) During this encounter, Piterberg steered the conversation toward the topic of sex. (Id.) It became clear to Glasgow at that point that Piterberg did not know that she had reported him and that Thomason had not followed up with her report. (Id.) On October 5, 2013, at an annual party for graduate students of the History Department, Glasgow was again sexually harassed by Piterberg. (Id. ¶ 118.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES - GENERAL** | | **'O'** |
| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

## III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under Rule 12(b)(6), a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988), overruled on other grounds by Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 552-63, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom. Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1125-26 (9th Cir. 2002).

## IV. DISCUSSION

### A. Takla's Title IX Claims

Title IX of the Education Amendments of 1972 states, with certain exceptions not at issue here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial assistance." 20 U.S.C. § 1681(a). Title IX provides a private cause of action to students who are sexually harassed by their teachers. Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 75 (1992) ("Title IX placed on the Gwinnett County Public Schools the duty not to discriminate on the basis of sex, and when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex. We believe the same rule should apply when a teacher sexually harasses and abuses a student.") (internal quotation marks and citation omitted).

To state a claim against UCLA for its faculty member's sexual harassment of a student under Title IX, a plaintiff must allege: (1) the institution had "substantial control" over both the harasser and the context in which the harassment occurred; (2) plaintiff suffered harassment "that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school;" (3) the institution had "actual knowledge" of the harassment; and (4) the institution acted with "deliberate indifference" to the known harassment, and this deliberate indifference "cause[d] students to undergo harassment or ma[d]e them

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

liable or vulnerable to it." Gebster v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290-93 (1998) (faculty-on-student sexual harassment); Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 645, 650 (1999) (student-on-student sexual harassment); see Stanley v. Trs. of Cal. State Univ., 433 F.3d 1129, 1137 (9th Cir. 2006) (adopting Davis' "deliberate indifference" standard for imputing liability to educational institutions for faculty members' sexual harassment).

UCLA contends that Takla's Title IX claims should be dismissed for failure to allege the fourth element. According to UCLA, Takla failed to allege that she experienced further harassment after making her report, and that UCLA responded to her report with deliberate indifference. Mot. at 7:21-19:6. For the reasons below, the Court finds that Takla's allegations are sufficient to withstand UCLA's motion to dismiss.

### (1) Further Harassment

In response to UCLA's argument that Takla has not alleged that she has suffered further harassment after making her report, Mot. at 7:21-11:9, Takla contends that she has alleged three forms of further harassment from Piterberg. First, Piterberg delivered a mediocre Fulbright Fellowship recommendation letter at least a month after he said he would, and after Takla reported his harassment and rejected a *quid pro quo* arrangement where he would provide a research assistant position to Takla in exchange for sex. Opp. at 6:7-12, citing FAC ¶¶ 40, 47. Second, UCLA became a sexually hostile environment for Takla after she made her report because Piterberg was still teaching in the History Department and every time Takla saw Piterberg, she was fearful that he would harass her again. 6:26-7:6. Third, after Takla filed her report, Piterberg, on one occasion, "stared at her with an angry look on his face and looked her up and down" and on another occasion, "closely follow[ed] her and a friend as they walked through campus . . . ." Opp. 7:6-10.

UCLA attacks plaintiff's first contention on the grounds that the FAC does not specify whether Piterberg delivered his recommendation letter *after* Takla reported his harassment. Reply at 3:9-4:8. UCLA has presented the Court with Piterberg's recommendation letter for Takla, which, according to the accompanying Fulbright reference form, was submitted on May 16, 2013, *before* plaintiff reported the harassment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

to UCLA. Given that the judicially noticed document establishes that Piterberg submitted the recommendation letter prior to Takla's report, the Court declines to recognize the late submission of the recommendation letter as further harassment.

As to Takla's contention that she was fearful that Piterberg would harass her again after making her report, which made UCLA a sexually hostile environment for her, UCLA argues that the FAC does not specify whether UCLA became a sexually hostile environment *after* her report. Reply at 4:9-25. Although the FAC does not make the temporal sequence completely clear, the Court is inclined to read the FAC to mean that UCLA became a sexually hostile environment *after* Takla filed her report. (FAC ¶ 140 ("For Plaintiff Takla, UCLA became a sexually hostile environment where her harasser was still on campus and teaching within the History Department and every time she saw him there was a fear that he would sexually harass her verbally and/or physically.").)

As to Takla's third contention that she encountered Piterberg on campus on two occasions, UCLA argues that plaintiff has alleged new facts that are not in the FAC. Reply at 4:26-6:2. UCLA further contends that even if the Court were to consider the new allegations, Takla will have failed to sufficiently allege further harassment because occasional sightings of an alleged harasser or allegations that the harasser "followed" or "stared at" the plaintiff is insufficient to constitute further harassment for purposes of imposing Title IX liability on an educational institution. Reply at 5 n.1; see Frazer v. Temple Univ., 25 F. Supp. 3d 598, 614 (E.D. Pa. 2014) (dismissing Title IX claim where plaintiff's only allegations of subsequent harassment were that her harasser "followed her, sat outside her dormitory, . . . 'and stood directly beside her [in the cafeteria] and stared at her while she was having a conversation with a fellow student' "); O'Hara v. Colonial Sch. Dist., 2002 U.S. Dist. LEXIS 12153, at *18-19 (E.D. Pa. Mar. 25, 2002) (dismissing Title IX claim, holding that plaintiffs' allegations that her harasser "could occasionally be found in the same vicinity as [plaintiff] and that he would stare at her" were "not claims of actionable harassment under Title IX"); Ha v. Northwestern Univ., 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014) ("[O]ccasional glimpse of [harasser] on the campus" and "claims that knowledge of [harasser's] presence on the campus caused [plaintiff] considerable grief" are not actionable under Title IX).

However, none of these cases explicitly considers whether Title IX liability attaches when a school's deliberate indifference "makes [plaintiffs] liable or vulnerable" to further

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

harassment, as opposed to "causing [students] to undergo" harassment.² In Davis, the U.S. Supreme Court interpreted the language of Title IX to delineate the conditions under which a school's "deliberate indifference" would permit imposing liability on an educational institution. 526 U.S. at 644-45. Because Title IX dictates that no person shall "be *subjected* to discrimination" on the basis of sex, the Supreme Court looked to the dictionary meaning of "subject" to hold that deliberate indifference must, at a minimum, "cause [students] to undergo" *or* "make liable or vulnerable" to harassment. Id. UCLA would have this Court understand the phrase, "make liable and vulnerable[,]" to "describe a type of causation by which an institution's conduct can be alleged to have resulted in further harassment." Mot. 10:3-13. Based on UCLA's interpretation of Davis, therefore, a Title IX claim cannot be brought "based merely on alleged 'vulnerability' without an allegation that any further harassment *actually* occurred." Id. 10:6-13. The Court disagrees. Given that the phrase, "cause [students] to undergo" harassment already contains an element of causation and that the phrase, "make liable and vulnerable" would be redundant if construed to require further harassment, the Court is not persuaded that UCLA's interpretation is correct.

Although there is a dearth of case law interpreting the phrase "make liable and vulnerable[,]" courts have recognized that a "vulnerability" to harassment created by a university's inadequate response, in the absence of "actual" harassment, can be actionable. In Kelly v. Yale University, a case analogous to the case at hand, a college student was sexually assaulted by a fellow student, and claimed that the university was deliberately indifferent in its response to the sexual assault where it failed to accommodate her repeated requests for academic and residential accommodations that would separate her from her assailant. 2003 WL 1563424, at *4 (D. Conn. Mar. 26, 2003). The plaintiff had "related to administrators the discomfort and fear that she would

---

² UCLA claims that the court in Moore v. Murray State Univ. held that the plaintiff's Title IX claim failed as a matter of law because there were "no allegations that the indifference caused [plaintiff] to experience further or additional harassment." 2013 WL 960320, at *5 (W.D. Ky. Mar. 12, 2013); Mot. at 8 n. 1. But the complaint in that case also failed to allege that the school's deliberate indifference "made [the plaintiff] liable or vulnerable to" harassment. In other words, the case does not necessarily stand for the proposition that a plaintiff must allege "actual" post-report harassment in order to plead deliberate indifference.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

feel if she encountered [the assailant]." Id. The court denied summary judgment for the university on the issue of whether the university was deliberately indifferent, stating that "[a]lthough [the plaintiff] was not subjected to further harassment by [the assailant], it was her departure from her classes and her dormitory, not any immediate action taken by Yale, that assured that outcome" and that "[t]herefore, a reasonable jury could find that Yale's response, or lack thereof, rendered [the plaintiff] *'liable or vulnerable'* to [the assailant's] harassment." Id. (emphasis added); see also Doe, ex rel. Doe v. Derby Bd. of Educ., 451 F. Supp. 2d 438, 444 (D. Conn. 2006) (in the context of determining the severity of the harassment suffered by the plaintiff, the court noted, "[the plaintiff] was constantly exposed to a potential encounter with her assailant because [their schools] were housed in the same building such that students from each could readily come in contact with each other. In fact, [the plaintiff's] affidavit states that she saw [the assailant] many times during the school year and that the experience of seeking him 'was very upsetting' and made the 'school year very hard.' Thus, even absent actual post-assault harassment by [the assailant], the fact that he and plaintiff attended school together could be found to constitute pervasive, severe, and objectively offensive harassment.").[3]

The Court agrees with plaintiffs that placing undue emphasis on whether further harassment actually occurred to gauge the responsiveness of an educational institution would penalize a sexual harassment victim who takes steps to avoid the offending environment in which she may again encounter the harasser. 2003 WL 1563424, at *4; see also Williams v. Bd. of Regents of the Univ. Sys. of Georgia, 477 F.3d 1282, 1297 (11th Cir. 2007) ("Although Williams withdrew from UGA the day after the . . . incident, we do not believe that at this stage her withdrawal should foreclose her argument that

---

[3] At oral argument, UCLA's counsel argued that Kelly and Doe are not controlling given that the Ninth Circuit in Reese v. Jefferson Sch. Dist. held that "under Davis, the school district cannot be deemed to have 'subjected' the plaintiffs to the harassment" because "there was no evidence that any harassment occurred after the school district learned of the plaintiffs' allegations." 208 F.3d 736, 740 (9th Cir. 2000). However, Reese does not specifically address Davis' vulnerability prong. Moreover, the harassment there ended only because "[b]y that time, the school year had ended." Id. In other words, even if the school had done nothing, plaintiffs could not have been subjected to further harassment nor be made vulnerable to it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

UGA continued to subject her to discrimination. In light of the harrowing ordeal that Williams faced on January 14, her decision to withdraw from UGA was reasonable and expected."). That Takla took it upon herself to avoid her alleged harasser by not setting foot on the UCLA campus should not absolve UCLA of its responsibility to take reasonable measures to end the harassment.

Accordingly, the Court denies UCLA's motion to dismiss Takla's Title IX claims on the basis of her failure to plead "actual" further harassment.

### (2) Deliberate Indifference

Deliberate indifference is a high standard that requires the plaintiff to prove conduct that is beyond mere negligence on the part of the educational institution. Oden, 440 F.3d at 1089. An educational institution acts with deliberate indifference "only where the recipient's response to the harassment or lack thereof is ***clearly unreasonable*** in light of the known circumstances." Davis, 526 U.S. at 648 (emphasis added). "Under this standard, if an institution takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment." Lilah R. v. Smith, 2011 U.S. Dist. LEXIS 81023, at *14 (N.D. Cal. Jul. 22, 2011). "If, on the other hand, an institution either fails to act, or acts in a way which could not have reasonably been expected to remedy the violation, then the institution is liable for what amounts to an official decision not to end discrimination." Id., citing Gebster, 524 U.S. at 290 ("The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation.").

UCLA asks this Court to dismiss Takla's Title IX claims, contending that her allegations do not support the inference that UCLA responded to her report of sexual harassment with deliberate indifference. Mot. at 11:10-19:6. The Court finds that it is premature to dismiss Takla's claims at the pleading stage on the basis that UCLA's response was not deliberately indifferent as a matter of law.

The FAC contains a number of allegations that, taken together, makes a plausible claim that UCLA's response to her report of sexual harassment was deficient and not reasonably expected to remedy the violation. ***First***, UCLA handled Takla's report

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

through what appears to be a truncated process called "Early Resolution," rather than a formal hearing before the Academic Senate, even though Thomason learned through her investigation that Piterberg had previously harassed another graduate student and two junior professors. (FAC ¶¶ 66, 68.) This was in violation of UCLA's own Title IX policy, which prohibits the use of Early Resolution in cases that involve multiple complaints of sexual misconduct. (Id. ¶ 69.) ***Second***, Thomason discouraged Takla from filing a written request for a formal investigation, stating that Piterberg's peers may well side with him and that Early Resolution would be faster and more efficient. (Id. ¶ 71.) ***Third***, Takla requested a formal investigative report after the conclusion of Early Resolution, but was told that no formal documentation or report existed because the matter was handled through Early Resolution. (Id. ¶ 72.) This too was in violation of UCLA's own policy, which states that Early Resolution efforts should be documented. (Id.) ***Fourth***, UCLA took nine months to investigate Takla's report but did not make any findings at the conclusion of its investigation, again in violation of UCLA's policy. (Id. ¶ 73.) ***Fifth***, UCLA did not inform Takla of the outcome of Early Resolution or whether Piterberg was sanctioned for his conduct. (Id. ¶ 74.) These allegations, read in the light most favorable to Takla, are plausibly suggestive of a claim entitling Takla to relief. See Lilah R. v. Smith, 2011 U.S. Dist. LEXIS 81023, at * (N.D. Cal. Jul. 22, 2011) (denying school's motion to dismiss where plaintiff's allegations showed that the school failed to timely complete its investigation in violation of Board of Education policy, failed to address steps it would take to limit the alleged harasser's future contact with plaintiff, and refused to transfer the alleged harasser from his position).

      The Court recognizes, as UCLA argues, that Takla's allegations, taken individually, may not constitute deliberate indifference. Specifically, Title IX does not impose on schools the duty to make particular disciplinary decisions. Oden, 440 F.3d at 1089 ("An aggrieved party is not entitled to the precise remedy that he or she would prefer."). Nor do delays in completing an investigation into reports of sexual harassment or violations of the school's own rules for investigating sexual harassment, necessarily amount to deliberate indifference. Id. (affirming summary judgment for school where there was a nine-month delay in convening a hearing on plaintiff's charges and the school violated its own policy by failing to convene a hearing within 30 days of receiving a report). A failure to inform the student of the disciplinary action taken against the alleged harasser may also be excusable. Ha, 2014 WL 5893292, at *2 (granting university's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
|---|---|---|---|
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

motion to dismiss where "[d]efendant took disciplinary action against [harasser] without disclosing the specifics other than instructing him to have no contact with Plaintiff.").

In both Oden and Ha, however, the schools' response went significantly beyond what is alleged here. In Oden, the college formed a committee and commenced hearings on the plaintiff's allegations, assisted the plaintiff in filing a formal complaint, issued a written decision after the hearing finding that the alleged harasser was guilty of sexual harassment, and took disciplinary measures against the alleged harasser including a suspension and a denial of a raise. 440 F.3d at 1087-89. In Ha, the university issued a memorandum at the conclusion of its investigation, informing the plaintiff of the university's conclusion that her professor was guilty of sexual harassment and that corrective and remedial actions would be taken. 2014 WL 5893292, at *1.

In its briefings, UCLA makes several fact-intensive assertions, describing in detail the measures that it took to investigate Takla's report and its efforts to protect Takla from further harassment. These arguments are better decided on a motion for summary judgment. At that time, plaintiffs and UCLA will have the opportunity to present evidence supporting their respective arguments as to whether UCLA's actions were, or were not, "clearly unreasonable in light of the known circumstances." At the pleading stage, however, the Court declines to find that UCLA's response was not deliberately indifferent as a matter of law.

### B. Glasgow's Vicarious Liability Claim

Glasgow claims that UCLA is vicariously liable for the negligent supervision, training, and retention of Piterberg by three of its employees, who could have prevented the harassment that occurred after she filed her report: (1) UCLA's former Title IX Officer, Pamela Thomason; (2) the former Chair of UCLA's History Department, David Myers, and (3) UCLA's Vice Chancellor of Academic Personnel, Carole Goldberg. (FAC. ¶¶ 123-30, 159-62.) Glasgow premises her vicarious liability claim on section 815.2 of the California Government Code, which states:

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

> the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Cal. Gov't Code § 815.2(a).

UCLA contends that Glasgow's claim fails as a matter of law for two reasons: (1) Glasgow fails to allege a "special relationship" between UCLA personnel and herself, which, according to UCLA, is necessary for stating a claim of vicarious liability against UCLA; and (2) UCLA, as a public entity, is immune from tort liability arising from its employees' discretionary acts under sections 815.2(b) and 820.2 of the California Government Code. Mot. at 19:7-24:26.

The Court finds that UCLA is immune from vicarious liability under the code sections cited above, and does not reach UCLA's alternate argument that Glasgow failed to allege a "special relationship" with UCLA.

### **Discretionary Immunity**

Sections 815.2(b) and 820.2 of the California Government Code together grant immunity to a public entity whose employees are alleged to have caused injury through their *discretionary* actions taken within the scope of their employment. Section 815.2(b) states:

> Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Cal. Gov't Code § 815.2(b). Section 820.2 states:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

Id. § 820.2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
|---|---|---|---|
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

A "discretionary act is one which requires the exercise of judgment or choice" and an "equitable decision of what is just and proper." Johnson v. State of California, 69 Cal. 2d 782, 788 (1968). Public entities are not, however, shielded from "lower-level, or *ministerial* decisions that merely implement a basic policy already formulated." Caldwell v. Montoya, 10 Cal. 4th 972, 981 (1995); Johnson, 69 Cal. 2d at 788 ("[A] discretionary act is one which requires personal deliberation, decision and judgment while an act is said to be ministerial when it amounts only to . . . the performance of a duty in which the officer is left no choice of his own.") (internal quotation marks and citation omitted). Courts have drawn this distinction, recognizing the need for "judicial abstention in areas in which the responsibility for *basic policy decisions* has been committed to coordinate branches of government." Johnson, 69 Cal. 2d at 793 (emphasis in original).

Glasgow argues that UCLA administrators' negligent hiring, supervision, and retention of Piterberg were not policy, or "planning-level," decisions but rather the "ministerial acts" of executing UCLA's Title IX and employment policies. Case law, however, holds otherwise. Decisions regarding the hiring and retention of employees and regarding the proper responses to allegations of harassment, are discretionary acts and subject to immunity under sections 815.2(b) and 820.2 of the California Government Code. Nicole M. ex rel. Jacqueline M. v. Martinez Unified. Sch. Dist., 964 F. Supp. 1369, 1389-90 (N.D. Cal. 1997) ("Decisions by a school principal or superintendent to impose discipline on students and conduct investigations of complaints [of sexual harassment] necessarily require the exercise of judgment or choice, and accordingly are discretionary, rather than ministerial, acts."); Doe ex rel. Doe v. Petaluma City Sch. Dist., 830 F. Supp. 1560, 1582-83 (N.D. Cal. 1993) (holding that school counselor was immune from liability under section 820.2 for negligent and intentional infliction of emotional distress based on his allegedly inadequate responses to plaintiff's reports of sexual harassment); Caldwell, 10 Cal. 4th at 981-82 (holding that school board's decision to terminate school principal was a discretionary act entitling board members to immunity under section 820.2); Kemmerer v. Cnty. of Fresno, 200 Cal. App. 3d 1426, 1438 (1988) (holding that administrators' decision to "institute disciplinary proceedings against" county employee "was a policy decision involving the exercise of discretion entitling them to immunity under Government Code section 820.2").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:15-cv-04418-CAS(SHx) | Date | November 2, 2015 |
|---|---|---|---|
| Title | NEFERTITI TAKLA AND KRISTEN HILLAIRE GLASGOW V. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | | |

Given that UCLA is immune from liability for its employees' discretionary acts, Glasgow's claim for vicarious liability against UCLA on the basis of its employees' negligent supervision, training, and retention of Piterberg fails as a matter of law.

## V. CONCLUSION

In accordance with the foregoing, UCLA's motion to dismiss the First Amended Complaint is denied as to Takla's Title IX claims and granted as to Glasgow's vicarious-liability claim without leave to amend.

IT IS SO ORDERED.[4]

                                                                                                                                     00  :  14

                                                                       Initials of Preparer              CMJ

---

[4] The Court declines to take judicial notice of Exhibit 9, an email from Thomason to Piterberg, informing Piterberg of Takla's report and instructing him to avoid contact with Takla. Plaintiffs argue that the email is admissible under California Evidence Code § 452(c), which permits a court to take judicial notice of "[o]fficial acts of the legislative, executive, and judicial departments of the United States." Whether the email in question constitutes an "official act," however, is a fact-specific inquiry that this Court declines to conduct at this stage of the proceeding.

UCLA also seeks to have this Court take judicial notice of a variety of emails. Because, at best, these emails could be judicially noticed to demonstrate that they were sent, and not for the truth of the matters asserted, the Court declines to judicially notice them.